UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===========================================================

Lachin Hatemi, individually, and on behalf of
     all others similarly situated,

                         Plaintiff,

       v.

M & T Bank Corporation,

                       Defendant.

**DECISION AND ORDER**

13-CV-1103S

===========================================================

## I.    INTRODUCTION AND BACKGROUND

Without rehashing case history available elsewhere in the docket, this case has concerned allegations that M & T Bank Corporation ("M & T") charged overdraft fees against Lachin Hatemi's ("Hatemi") checking account even though Hatemi never requested overdraft services. On April 11, 2014, M & T filed a motion to dismiss and to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  (Dkt. No. 15.)  The Court recommended denying the motion (Dkt. No. 33), and Judge Skretny adopted the recommendation (Dkt. No. 43).  M & T appealed; in the meantime, some discovery began in the case, Hatemi retained counsel and ended his *pro se* status, and new counsel filed an amended complaint (Dkt. No. 89) with an eye toward a class action.

On March 4, 2016, the Second Circuit issued a summary order vacating the denial of arbitration.  (Dkt. No. 99.)  The formal mandate issued on March 30, 2016.  (Dkt. No. 102.) Among other analysis, and important for reasons explained below, the Second Circuit decided that "[b]ecause the issues of overdraft protection and accompanying fees are indisputably related to Hatemi's account and to a service provided in connection with his account, which results in a fee

obligation connected to the account, the Account Agreement's arbitration clause extends to the instant dispute regardless of whether the disputed overdraft protection agreement is incorporated into the Account Agreement or even exists." (*Id.* at 4); *see also* 2016 WL 852818 at *1. The Second Circuit decided further that "in such arbitration, factual disputes as to the existence or terms of any overdraft protection and fee obligations can be raised and resolved." 2016 WL 852818, at *1 (citation omitted).

Two other important events occurred between the Second Circuit's announcement of its decision and its issuance of the formal mandate. First, the Court invited the parties to file brief statements "addressing whether there is any reason to avoid staying this case immediately pending arbitration." (Dkt. No. 99.) M & T requested an order requiring arbitration to start within 60 days and a stay of the case, but not dismissal. "[T]he only reason the action should not be dismissed is to provide a forum to confirm any eventual arbitration award." (Dkt. No. 100.) Hatemi asked the Court not to order arbitration until after the United States Supreme Court decides whether to grant further review of the case. (*See* Dkt. No. 101.) Second, a review of the Second Circuit docket shows that Hatemi made no application to that court for any sort of rehearing under Rules 35 or 40 of the Federal Rules of Appellate Procedure ("FRAP") or for a stay of the mandate under FRAP 41(d).

Since the Second Circuit effectively has ordered the case to go to arbitration, there are only three issues left before the Court: whether to stay the case pending arbitration and how quickly that stay should occur; whether to require that arbitration begin within any particular timeframe; and what to do about certain other issues in the case that currently are unresolved.

II.   DISCUSSION

   A. *Standard of review*

As an initial matter, the Court will address an issue that might be smaller than the more substantive issues pending but still is important to treat correctly.  Is an order staying a case pending the outcome of arbitration dispositive or non-dispositive?  When this Court addressed arbitration previously, it did so through a Report and Recommendation because M & T's corresponding motion had a request for dismissal intertwined with it.  (*See, e.g.*, Dkt. No. 15 at 1.) The Report and Recommendation was a more cautious way to address the combined issues.  Now, the Second Circuit has mandated that all issues related to Hatemi's account go to arbitration.  The most significant issue left is the propriety of a stay and what the scope of that stay might be.

"Although the Second Circuit has not yet addressed the issue, the prevailing view among District Courts in this Circuit is that decisions to compel arbitration are non-dispositive.  Further, the only two Courts of Appeals that appear to have addressed the issue—the First and Third Circuits—have recently held that decisions to compel arbitration are non-dispositive." *Cumming v. Indep. Health Ass'n, Inc.*, No. 13-CV-969-A F, 2014 WL 3533460, at *1 (W.D.N.Y. July 16, 2014) (Arcara, *J.*) (citations omitted).  The First Circuit's rationale is instructive:

> Motions to stay litigation pending the resolution of parallel arbitration proceedings are not among the motions enumerated in 28 U.S.C. § 636(b)(1)(A). Nor are they of the same character as the listed motions.  A federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it.  Although granting or denying a stay may be an important step in the life of a case (lawyers are keenly aware that there are substantive consequences to whether or not a stay is granted), in the last analysis a stay order is merely suspensory.  Even if such a motion is granted, the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award.  *See* Federal Arbitration Act, 9 U.S.C. § 9 (permitting parties to apply to the court for an order confirming the

award); *id.* § 10 (providing district courts with authority to vacate an arbitral award); *id.* § 11 (providing district courts with authority to modify an arbitral award). We acknowledge that the scope of judicial review of arbitral awards is very narrow, but that does not extinguish such review. *See Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990). Thus, there is no final exercise of Article III power at the time the court acts on the motion to stay.

*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010). The Third Circuit's rationale is similar:

> We agree with the First Circuit. A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation. And, even where motions to compel arbitration are granted, federal courts continue to retain the authority to dissolve any stay or make any orders effectuating arbitration awards. Given this, we see no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration. Therefore, the District Court incorrectly concluded that Magistrate Judges lack the authority to rule on such requests.

*Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) (unpublished decision).

This Court sees no reason to deviate from the above reasoning under the circumstances now before it. The Second Circuit's mandate is broad enough to send all pending substantive and procedural issues to the arbitrator. Sending all issues to the arbitrator will not extinguish or prejudice the parties' rights in any way that would resemble an exercise of Article III power. Under the FAA, the parties would have to return to the Court anyway for formal closure of their claims, through either a confirmation or a vacation of any eventual arbitration decision. The Court thus is comfortable adjudicating the issue of a stay through a non-dispositive Decision and Order, and will proceed accordingly.

### B. Stay pending arbitration

The Second Circuit's mandate simplified the procedural posture of this case.  The plain

text of the FAA, combined with another Second Circuit decision from less than a year ago, make

the issue of a stay simple as well.  "If any suit or proceeding be brought in any of the courts of the

United States upon any issue referable to arbitration under an agreement in writing for such

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in

such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of

one of the parties stay the trial of the action until such arbitration has been had in accordance with

the terms of the agreement, providing the applicant for the stay is not in default in proceeding

with such arbitration."  9 U.S.C. § 3 (emphasis added).  Until last year, some courts in the Circuit

interpreted Section 3 of the FAA to require a stay when *part* of a case needed to go to arbitration;

those courts then pondered what to do if *an entire case* needed to go to arbitration.  *See, e.g., Glover*

*v. Colliers Int'l NY, LLC*, No. 13-CV-8843 JMF, 2014 WL 5410016, at *5 (S.D.N.Y. Oct. 24, 2014)

("Although Section 3 of the FAA requires a district court to stay proceedings where an issue before

it requires arbitration, *see* 9 U.S.C. § 3, a court has discretion to dismiss, rather than stay, an

action when all of the issues in it must be arbitrated, because no useful purpose will be served by

granting a stay of the proceedings.") (internal quotation and editorial marks omitted), citing *Salim*

*Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 92–93 (2d Cir. 2002).  Last year, the Second Circuit

abrogated *Salim* and interpreted Section 3 to cover cases that are subject to arbitration in their

entirety.  "We join those Circuits that consider a stay of proceedings necessary after all claims have

been referred to arbitration and a stay requested.  The FAA's text, structure, and underlying policy

command this result . . . . The plain language specifies that the court 'shall' stay proceedings

5

pending arbitration, provided an application is made and certain conditions are met." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir.), *cert. denied*, 136 S. Ct. 596 (2015).

This case meets all the prerequisites for Section 3 of the FAA.  The Second Circuit mandate addresses the first half of Section 3 and resolves that the entire case must proceed to arbitration.  As for the second half of Section 3, nothing in the record indicates that any party is in default with respect to its obligation to arbitrate.  The Court thus will apply Section 3 and will stay the case until arbitration proceedings run their course.  The Court will direct the Clerk of the Court to arrange for an administrative closing[1] of the case.  This course of action will address M & T's concern from its recent letter about having a forum later to confirm any eventual arbitration award.

The next issue is how quickly to stay the case.  In his recent letter, Hatemi urged the Court to give him time to seek review of the Second Circuit mandate before the United States Supreme Court.  Two factors counsel against allowing that long of a wait.  First, the Account Agreement allows a dispute to go to arbitration anytime, once 60 days pass from the time when M & T becomes aware of a dispute.  (*See* Dkt. No. 15-2 at 19.)  This provision coincides with another provision setting forth that arbitration here will proceed under the Consumer Arbitration Rules of the American Arbitration Association ("AAA") (*see id.* at 18); the Consumer Arbitration Rules do not appear to have any language restricting when arbitration can begin.  *See* Rule R-2, "Starting Arbitration under an Arbitration Agreement in a Contract," *available at*

https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425

---

[1] By "administrative closing," the Court means that the case will be placed on its internal administrative list of closed cases.  Legally, any motions pending as of this writing will remain pending, with a full preservation of the parties' positions and rights.

&revision=latestreleased (last visited Apr. 6, 2016).  Second, Hatemi's decision not to seek relief

from the Second Circuit suggests that his need to delay arbitration and a stay of the case is not

urgent.  Under FRAP 41(d)(1), "[t]he timely filing of a petition for panel rehearing, petition for

rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the

petition or motion, unless the court orders otherwise."  Hatemi did not seek a rehearing of the

decision or a stay of the mandate.  Under FRAP 41(d)(2), Hatemi could have asked the Second

Circuit "to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme

Court."  Hatemi did not make this request either.  The decision not to stay or otherwise to move

against the mandate effectively cut off Hatemi's chances of seeking a stay directly from the

Supreme Court.  An individual Justice of the Supreme Court can grant a stay of enforcement of

any judgment, but "[a]n application for a stay shall set out with particularity why the relief sought

is not available from any other court or judge.  Except in the most extraordinary circumstances, an

application for a stay will not be entertained unless the relief requested was first sought in the

appropriate court or courts below or from a judge or judges thereof."  U.S. Sup. Ct. R. 23(3).  The

Court sees no reason to give Hatemi greater consideration than he gave himself before the Second

Circuit with respect to a stay.  Accordingly, the Court will issue a stay effective immediately.

As for compelling arbitration, the Court will formally order the parties to arbitration to the

extent that the Second Circuit mandate did not do so already, but the Court sees no need to set a

timeframe.  The Account Agreement between the parties and the rules of the AAA appear to allow

arbitration to begin as soon as one side makes the appropriate filing with the AAA.  In the unlikely

event of a delay from both sides that raises questions about breach of the Account Agreement or

default under 9 U.S.C. § 3, the Court would address the problem as needed. *Cf. Van Buren v. Cargill, Inc.*, No. 10-CV-701, Dkt. Nos. 16–17 (W.D.N.Y.) (Skretny, *J.*) (staying a case pending the outcome of arbitration without requiring arbitration to begin within a particular time).

### C. *Unresolved pending matters*

To ensure compliance with the broad nature of the Second Circuit's mandate, the Court is leaving for the arbitrator two major issues that require some attention. One issue is M & T's pending motion to dismiss the third cause of action for conversion. (Dkt. No. 96.) As stated above, the motion will be legally preserved through the administrative closing of the case; any dispute about the viability of a conversion claim will have to go to the arbitrator. A broader issue, though, is the viability of the entire Amended Complaint in the wake of the Second Circuit's mandate. The Account Agreement between the parties contains the following provision:

> There will be no class Claim (i.e., Claims by or on behalf of other persons will not be considered in or consolidated with the arbitration proceedings between you and us). The arbitrator may not consolidate your Claims with any other person's claims (except for persons who are joint account holders on your account) and may not otherwise preside over any form of a representative or class proceeding.

(Dkt. No. 15-2 at 18; *see also id.* at 19 (extending the prohibition on class claims to "other legal proceedings" besides arbitration).) The Second Circuit's mandate does not address directly the Account Agreement's prohibition on class actions. That said, the rationale by which the Second Circuit extended the arbitration provision to all the claims and factual disputes in this case easily can apply to the provision prohibiting class actions. To the extent that Hatemi's desire for a class action becomes an issue going forward, the arbitrator will have to look at the issue in the first instance.

III.     CONCLUSION

       For all of the foregoing reasons, the Court stays this case immediately pending the outcome

of arbitration proceedings.  The parties are directed to arbitration in accordance with the Second

Circuit's mandate.  The Clerk of the Court will arrange for an administrative closing of the case.

       SO ORDERED.

                         __/s Hugh B. Scott_____
                         HONORABLE HUGH B. SCOTT
                         UNITED STATES MAGISTRATE JUDGE

DATED: April 6, 2016